IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

              Plaintiff,

     v.

LEONEL MARIN-TORRES,

              Defendant.

No. 3:14-cr-00038-HZ

OPINION & ORDER

S. Amanda Marshall
United States Attorney
Gregory R. Nyhus
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

       Attorneys for Plaintiff

Leonel Marin-Torres
36048-086
FCI Sheridan—Inmate Mail/Parcels
P.O. Box 5000
Sheridan, OR 97378

       Defendant Pro Se

1- OPINION & ORDER

HERNÁNDEZ, District Judge:

On October 27, 2014, a jury found Defendant guilty of two crimes: (1) assault with a dangerous weapon with intent to do bodily harm in violation of 18 U.S.C. §§ 113(a)(3) and 7(3), and (2) possession of contraband in prison in violation of 18 U.S.C. §§ 1791(a)(2), (b)(3), (d)(1)(B), and 7(3). Defendant moves for a new trial. For the reasons that follow, the Court denies the motion.

## STANDARDS

Upon motion by a defendant, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); United States v. Moses, 496 F.3d 984, 987 (9th Cir. 2007). The court has discretion in deciding whether to grant a motion for a new trial. See United States v. Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000); United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981). "It should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." Pimentel, 654 F.2d at 545 (internal citation omitted); see also United States v. Del Toro-Barboza, 673 F.3d 1136, 1153 (9th Cir. 2012).

## DISCUSSION

Defendant contends that his constitutional rights were violated in four ways: (1) the Court did not allow Defendant to ask questions during voir dire; (2) the Multnomah County Jail denied Defendant three prescription medications, causing him to go on a hunger strike; (3) the Court did not arrange for any African-Americans to be on the jury; and (4) the Government did not fully disclose all documents requested in discovery. Due to these alleged violations, Defendant argues that he should be granted a new trial.

///

2- OPINION & ORDER

I.      Voir Dire

Defendant argues that his Sixth Amendment rights were violated because the Court did not allow him to ask questions of potential jurors during voir dire. Defendant misunderstands the law.

Federal judges have "ample discretion" in deciding how to best conduct voir dire. Rosales-Lopez v. U. S., 451 U.S. 182, 189 (1981). The court may examine prospective jurors or may permit the attorneys for the parties, or pro se parties themselves, to do so. Fed. R. Crim. P. 24. If the court examines the jurors, it must permit the attorneys or pro se parties to ask further questions or submit further questions that the Court may ask if it considers them proper. Id.

Here, the Court lawfully exercised its discretion in deciding to examine prospective jurors. Defendant was given ample opportunity to submit proposed questions for the Court to ask. On March 4, 2014, more than six months before the trial, the Court's Trial Management Order [12] directed the parties to submit proposed voir dire questions fourteen days prior to the scheduled trial date. While the Government submitted a list of questions, Defendant chose not to. The Court gave Defendant another opportunity to submit questions at the beginning of the jury selection process. Once again, Defendant chose not to. Defendant has no constitutional right to personally ask the jurors questions, nor does he present any evidence whatsoever that the Court abused its discretion in conducting voir dire.

II.      Access to Medication and Hunger Strike

Defendant contends that his Sixth and Eighth Amendment rights were violated when the Multnomah County Jail denied him access to three prescribed medications. Defendant was on a hunger strike in protest during several days of the trial.

3- OPINION & ORDER

Defendant's access to medication was addressed by the Court at length throughout the

trial. The Court investigated the validity of Defendant's allegation that he was being denied his

medications. The Multnomah County Sheriff's Department reported that Defendant had access to

all of his prescribed medications, with the exception of one that he had been caught hoarding.

The Court discussed this finding with the Defendant, who voluntarily chose to begin eating

again. Defendant's constitutional rights were not violated, nor can his voluntary hunger strike

form the basis for a new trial.

III.    Jury Composition

Defendant, who is Afro-Cuban, made clear throughout the jury selection process that he

wanted the Court to ensure that Afro-Cubans or African-Americans were represented on the jury.

However, as the Court repeatedly explained to Defendant, the Court has no control over who is

included in the pool of potential jurors, including which races or ethnicities are represented.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall

enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein

the crime shall have been committed...." U.S. Const. Amend. VI. This guarantee, as interpreted

by the Supreme Court, "necessarily contemplates an impartial jury drawn from a cross-section of

the community." U.S. v. Esquivel, 88 F.3d 722, 724 (9th Cir. 1996) (quoting Thiel v. Southern

Pacific Co., 328 U.S. 217, 220 (1946). However, the Supreme Court has also explained:

> This does not mean, of course, that every jury must contain representatives of all the
> economic, social, religious, racial, political and geographical groups of the community;
> frequently such complete representation would be impossible. But it does mean that
> prospective jurors shall be selected by court officials without systematic and intentional
> exclusion of any of these groups.

Thiel, 328 U.S. at 220.

In order to establish a prima facie violation of the Sixth Amendment fair cross-section requirement in jury selection methods, Defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979). "Once the defendant has established a prima facie case, the burden shifts to the government to show that 'a significant state interest be manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group.' " United States v. Hernandez-Estrada, 749 F.3d 1154, 1159 (9th Cir. 2014) cert. denied, No. 14-5554, 2014 WL 3841869 (U.S. Dec. 1, 2014) (citations omitted).

Defendant argues that his Sixth Amendment rights were violated because the Court did not arrange for any "citizen of the BLACK AFRICAN AMERICAN RACE" to be included in the pool of potential jurors. Def.'s Translated Mot. [141] at 3. Defendant satisfies the first prong of the Duren test because African-Americans are a distinctive group in the community. Hernandez-Estrada, 749 F.3d at 1159 (citing United States v. Cannady, 54 F.3d 544, 547 (9th Cir. 1995)). The Court also assumes without deciding that Defendant could demonstrate that Afro-Cubans are a "distinctive" group for the purpose of a fair cross-section challenge.[1] However, Defendant fails to make any allegations or present any evidence in support of the second and third prongs of the test. The fact that the jury in Defendant's trial did not include the racial representation that Defendant would have liked does not demonstrate any "systematic

---

[1] Defendant's motion specifically addresses the lack of jurors of the "BLACK AFRICAN AMERICAN RACE"; however, throughout the trial Defendant made clear that his objection regarding jury composition was lack of representation of both African-Americans and Afro-Cubans.

exclusion" of African-Americans or Afro-Cubans in the jury-selection process. Therefore, Defendant fails to show any constitutional violation.

IV.    Access to Discovery

Defendant contends that his Sixth and Fourteenth Amendment rights were violated because there were 180-187 pages of discovery to which he never had access and 39-40 pages of discovery that were not presented to him for use at trial.

In pre-trial hearings and throughout the trial, the Court addressed Defendant's access to discovery. Defendant was provided with stand-by counsel and an investigator, in part to facilitate Defendant's access and opportunity to review all material disclosed by the Government. As counsel and the investigator explained to the Court, they attempted to share all of the discovery materials with the Defendant. However, at times the Defendant was uncooperative or unwilling to review the materials. Given the facts of the case, substantial portions of discovery contained sensitive information regarding other inmates and the Government had security concerns about allowing Defendant to keep copies of the material. However, Defendant was provided ample time for review and had access to all necessary information for use throughout the trial. Defendant's assertion that there were additional pages of discovery which he never saw is unsupported by the record and does not form the basis for a new trial.


///


///


///


6- OPINION & ORDER

CONCLUSION

Defendant's motion for a new trial [135] is DENIED.

IT IS SO ORDERED.

Dated this ___30___ day of ___Dec___, 201_4_.


_____
MARCO A. HERNÁNDEZ
United States District Judge